UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| TIFFIN L. SMITH, ) | |
|     Plaintiff, ) | Case No. 7:14cv00477 |
| ) | |
| v. ) | **REPORT & RECOMMENDATION** |
| ) | |
| SHERIFF CHIP HARDY[1], *et al.*, ) | By:    Joel C. Hoppe |
|     Defendants. ) | United States Magistrate Judge |

Tiffin L. Smith, a state prisoner proceeding *pro se*, filed suit under 42 U.S.C. § 1983 alleging that Sheriff Harding, the Albemarle-Charlottesville Regional Jail ("ACRJ"), Officer Richard Caligiuri, and Officer "John Doe II" failed to protect him from a fellow detainee. The three named Defendants moved to dismiss the complaint, and Smith responded.[2] Smith also moved to amend his complaint by joining four new defendants, which the Defendants oppose.

The motions are before me for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). Having considered the parties' pleadings, supporting briefs, and the applicable law, I respectfully recommend that the presiding District Judge grant Harding and ACRJ's

---

[1] The parties inform the Court that the lead Defendant is Albemarle County Sheriff John E. "Chip" Harding. *See, e.g.*, Harding-ACRJ Br. 1, ECF No. 24; Pl. Br. in Opp. 1, Dec. 31, 2014, ECF No. 26.

[2] Harding and ACRJ moved for summary judgment in the alternative. ECF Nos. 23, 24-1. I need not consider any materials outside the pleadings in order to recommend that the District Court dismiss Smith's claims against these two Defendants. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty*, 788 F. Supp. 2d 431, 437 (D. Md. 2011); Fed. R. Civ. P. 12(b)(6), (d). In recognition of Smith's *pro se* status and my obligation to hold his pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), however, I will consider any well-pled facts alleged in his responses to the Defendants' motions to dismiss. *See Shomo v. Apple, Inc.*, No. 7:14cv40, 2015 WL 777620, at *2 (W.D. Va. Feb. 24, 2015); *Christmas v. Arc of the Piedmont, Inc.*, No. 3:12cv8, 2012 WL 2905584, at *1 (W.D. Va. July 16, 2012).

motion to dismiss, ECF No. 23, deny Caligiuri's motion to dismiss, ECF No. 30, and deny Smith's motion to amend, ECF No. 36, as futile.

I. Standards of Review

*A.  Motion to Dismiss*

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion challenges whether the complaint's factual allegations state a claim upon which relief can be granted. *See Owens v. Baltimore City State's Att'ys Office*, 767 F.3d 379, 396 (4th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is "facially plausible" when the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" under the governing law. *Id.* This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Determining whether a complaint clears this threshold is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In doing so, the court accepts as true all well-pled facts and construes those facts and all reasonable inferences in the plaintiff's favor.[3] *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The court need not accept "legal conclusions, formulaic recitation of the elements of a

---

[3] The court also must construe *pro se* pleadings liberally, so that any potentially valid claim can be fairly decided on its merits rather than the *pro se* litigant's legal acumen. *See Covey v. Assessor of Ohio Cnty*, 777 F.3d 186, 194 (4th Cir. 2015). Still, "a *pro se* plaintiff must . . . allege facts that state a cause of action, and district courts are not required 'to conjure up questions never squarely presented to them.'" *Consider v. Medicare*, No. 3:09cv49, 2009 WL 9052195, at *1 (W.D. Va. Aug. 3, 2009) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)), *aff'd*, 373 F. App'x 341 (4th Cir. 2010).

2

cause of action, or bare assertions devoid of further factual enhancements," as those are not well-pled facts for Rule 12(b)(6)'s purposes. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

B.     *Motion to Amend*

Leave to amend a complaint should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). The court should deny leave "only where good reason exists," *Franks v. Ross*, 313 F.3d 184, 189 n.15 (4th Cir. 2002), such as when amending would be futile, cause undue delay, or prejudice the defendant, *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

Similar, but more specific, standards apply when the plaintiff's motion to amend seeks to join new parties. *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001) (citing Fed. R. Civ. P. 20(a)). Defendants may be joined if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). The court should deny joinder where either requirement is not met. *See id.* In all other cases, "Rule 20 gives courts wide discretion," *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007), to determine whether permissive joinder is appropriate "on a case-by-case basis," *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983).

II. Background

In June 2014, Smith was detained at ACRJ awaiting trial on drug charges.[4] *See* Compl. 1, ECF No. 1; *id.* Ex. C, ECF No. 1-1. Before his arrest, Smith had "been told by Detective McKay

---

[4] Smith pled guilty to the underlying charge in October 2014. *See* Case Details, *Commonwealth v. Smith*, No. CR14000205-01 (Charlottesville Cir. Ct. Oct. 14, 2014). He was later transferred to a Virginia Department of Corrections facility. ECF No. 39.

3

that he'd watch out for [Smith's] safety" because Smith "mad[e] statements about [his] co-defendant, Jeremy J. Cruz." *Id.* 1–2. Smith's statements were recorded on May 2, 2014, and he was transferred to ACRJ on the same day. *Id.* at 2.

Officer Richard Caligiuri booked Smith into the jail when he arrived.[5] *Id.*; *see also* Resp. to Order 1–2. "McKay told the officer to put a 'keep away order' between [Smith] and [his] co-defendant Jeremy Cruz." Compl. 2. According to Smith, "[a] 'keep away' is a process entered into the computer system at [ACRJ] to keep [individuals] separate from each other for safety reasons." Resp. to Order 2. Caligiuri "failed to initiate this process" for Smith after "McKay instructed him to put a 'keep away' from [his] co-defendant." *Id.* at 1–2.

On June 12, 2014, Officer John Doe II transported Smith and Cruz to court together. *See id.* at 2; Pl. Br. in Opp. 2. On the way there, Cruz "viciously attacked" Smith by "beat[ing]" him on "[his] head with a set of handcuffs." Compl. 2, 4. Smith was later "taken to the [ACRJ] Medical Department and treated." *Id.* at 3. Cruz was charged with assault. *See id.*

In September 2014, Smith filed this § 1983 action alleging that the Defendants "willfully" disregarded a "known" risk to his safety and that he was injured as a result of Caligiuri's failure to enter the protective order. *See* Compl. 3–4; Resp. to Order 1–2. He seeks "monetary damages of $15,000." Compl. 2. In December 2014, Harding and ACRJ moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 23.

---

[5] Smith initially named Sheriff Harding, ACRJ, "Officer John Doe," and "John Doe II" as defendants in this action. On October 15, 2014, the Court ordered Smith to provide "additional information describing defendant[s] Officer John Doe and John Doe II" so his Complaint could be served on the proper individuals. ECF No. 10. Smith responded that "John Doe I is the officer who booked him into the [ACRJ] subsequent to his arrest." Resp. to Order 1, Oct. 27, 2014, ECF No. 13. He thought the officer's last name might be "Calugria." *Id.* Smith also explained, "John Doe II would be the officer who transported my codefendant and [me] to court." *Id.* Smith could not identify that person by name. The Defendants concede that Richard Caligiuri is "John Doe I." *See* Mot. to File Late Pleading, ECF No. 29.

4

Caligiuri filed his own Rule 12(b)(6) motion in January 2015. ECF No. 30. On February 20, 2015, Smith filed a motion to amend his Complaint by joining the Charlottesville City Sheriff, Sergeant C.J. Mundy, Officer J. Lotts, and Corporal C. Woods as defendants. ECF No. 36. The motions are ripe for review.

III. Discussion

A cause of action under 42 U.S.C. § 1983 "has two essential elements: 'A plaintiff must allege the [deprivation] of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). The Constitution imposes on state actors "a continuing obligation to satisfy certain minimum custodial standards" in order to "take care of those who have . . . been deprived of their liberty" through the legal process. *Collins v. City of Harker Heights*, 503 U.S. 115, 127–28 (1992). This includes a duty to take "reasonable measures" to protect individuals from "a substantial risk of serious harm" while incarcerated.[6] *Farmer v. Brennan*, 511 U.S. 825, 834

---

[6] Smith's failure-to-protect claim sounds in the Fourteenth Amendment's substantive due-process protections, not in the Eighth Amendment's ban on cruel and unusual punishments. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004). The Constitution affords greater protection to pretrial detainees than to convicted prisoners in the sense that "pretrial detainees (unlike convicted prisoners) cannot be punished at all," *Kingsley v. Hendrickson*, --- U.S.---, 135 S. Ct. 2466, 2475 (2015), until the State "secure[s] a formal adjudication of guilt in accordance with due process of law," *Bell*, 441 U.S. at 535 n.16. *See also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). To that end, "[p]retrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere*, 463 U.S. at 244).

"This circuit, however, has concluded that [substantive due-process] claims asserted by pretrial detainees are governed by the deliberate indifference standard," *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001), that governs analogous claims by convicted prisoners, *Hall v. Holsmith*, 340 F. App'x 944, 946–47 (4th Cir. 2009) (per curiam) ("[W]e use the Eighth Amendment's

(1994) (convicted prisoners); *Brown v. Harris*, 240 F.3d 383, 388–89 (4th Cir. 2001) (pretrial detainees). An official's failure to protect an incarcerated person from physical harm "translates into constitutional liability," *Farmer*, 511 U.S. at 834, when two requirements are met. *Brown*, 240 F.3d at 389.

First, the "deprivation alleged must be, objectively, sufficiently serious" in the sense that the "person [was] detained or incarcerated 'under conditions posing a substantial risk of serious harm.'" *Id.* (finding that "[a] substantial risk of suicide is . . . the type of serious harm" covered by *Farmer*'s objective prong) (quoting *Farmer*, 511 U.S. at 834). "A risk of assault may be sufficiently substantial as to require action by prison officials where it is 'highly probable' that a particular attack will occur, or in instances where a particular detainee 'pose[s] a heightened risk of assault to the plaintiff.'" *Bond v. Story*, No. 3:09cv147, 2010 WL 2943081, at *3 (E.D. Va. July 20, 2010) (quoting *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005)).

Second, the "official must have a 'sufficiently culpable state of mind.'" *Brown*, 240 F.3d at 389 (quoting *Farmer*, 511 U.S. at 834). For failure-to-protect claims, the requisite state of mind is "deliberate indifference to a substantial risk of serious harm." *Farmer*, 511 U.S. at 828.

---

'deliberate indifference' standard . . . in evaluating the pretrial detainee's claim."). *See, e.g.*, *Johnson v. Fields*, --- F. App'x ---, 2015 WL 3958496, at *2 (4th Cir. June 30, 2015) (deliberate indifference to detainee's serious medical needs); *Hearn v. Lancaster Cnty.*, 566 F. App'x 231, 235–36 (4th Cir. 2014) (deliberate indifference to substantial risk of detainee's suicide); *Parrish*, 372 F.3d at 302–03 (deliberate indifference to substantial risk of harm to detainee); *Brown*, 240 F.3d at 389 (deliberate indifference to substantial risk of detainee's suicide); *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999) (deliberate indifference to detainee's serious medical needs); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (deliberate indifference to substantial risk of detainee's suicide). Thus, as a practical matter, "a pretrial detainee's [substantive] due process rights are coextensive with a convicted prisoner's Eighth Amendment rights." *Marshall v. Abbassi*, 109 F. App'x 609, 610 n.3 (4th Cir. 2004) (per curiam) (citing *Hill v. Nicodemus*, 979 F.2d 987, 990–92 (4th Cir. 1992)); *see, e.g.*, *Toomer v. Baltimore City Detention Ctr.*, Civ. Act. No. DKC-12-0083, 2014 WL 4678712, at *3–5 (D. Md. Sept. 18, 2014) (deliberate indifference to substantial risk of physical attacks by other detainees); *King-Fields v. Leggett*, Civ. Act. No. ELH-11-1491, 2014 WL 694969, at *10–12 (D. Md. Feb. 19, 2014) (same); *Mathias v. Simpkins*, No. 7:07cv31, 2007 WL 1577336, at *3–5 (W.D. Va. May 31, 2007) (same).

6

"Deliberate indifference requires a showing that the defendant[] actually knew of and disregarded a substantial risk of serious injury to the detainee." *Young*, 238 F.3d at 575–76. Ultimately, this requires the plaintiff to make two showings:

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officer[] should have recognized it; [he] actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." As with the subjective awareness element, it is not enough that the official should have recognized that his actions were inappropriate; [he] actually must have recognized that his actions were insufficient.

*Parrish*, 372 F.3d at 303 (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). Actual knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. Thus, a "plaintiff can make a prima facie case under this standard by showing 'that a substantial risk of [serious harm] was . . . expressly noted by prison officials in the past, and [that] the circumstances suggest" the defendant official "'had been exposed to information concerning the risk and thus must have known about it.'"[7] *Parrish*, 372 F.3d at 303 (quoting *Farmer*, 511 U.S. at 842).

A.  *Caligiuri's Motion*

Caligiuri argues that Smith's Complaint does not state a claim against him because it neither alleges that Smith suffered "a serious or significant injury" nor plausibly suggests that

---

[7] Importantly, the deliberate-indifference standard does not require the plaintiff to show that the official acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.*; *see also id.* at 844 ("Prison officials charged with deliberate indifference might [be able to] show . . . that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of the danger, or that they knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."). Similarly, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable safety." *Id.* at 844.

7

Caligiuri was deliberately indifferent to a substantial risk of serious harm. Caligiuri Br. 3–4. I disagree. Smith's Complaint need only allege facts that allow the court to draw the reasonable inference that Caligiuri was "deliberately indifferent to a substantial risk of serious harm" to Smith's physical safety and he suffered physical harm from an attack. *Brown*, 240 F.3d at 388–89; *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). He does not have to allege that he suffered a "serious or significant physical or emotional injury" in order to state a failure-to-protect claim against the deliberately indifferent official. *Thomas v. Younce*, 604 F. App'x 325, 326 (4th Cir. 2015) (per curiam). While such evidence "may aid a [plaintiff] in making his case, a prisoner only need 'show that he was incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015); citing *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995)); *see also King-Fields*, 2014 WL 694969, at *12 n.15.

Smith alleges that Detective McKay told him that "he'd watch out for [his] safety" because Smith "mad[e] statements about [his] co-defendant" Cruz and that McKay "told" or "instructed" the ACRJ booking officer to "put a keep away order between" Smith and Cruz when they arrived at the jail. Compl. 1–2. Drawing all reasonable inferences in Smith's favor, the necessity of this keep-away order shows the existence of a substantial risk of harm.

Smith also alleges that Caligiuri was the ACRJ booking officer who "failed to initiate" the process for entering the order despite McKay's express instruction to do so. Compl. 3. While Caligiuri may have a reasonable explanation for not entering the order or some other defense, *see Farmer*, 511 U.S. at 844, none of those facts are before the Court. Instead, the allegations support a reasonable inference that Caligiuri actually knew about the heightened risk Cruz posed to Smith and "must have recognized" that his failure to promptly enter the keep-away order was "inappropriate in light of that risk." *Parrish*, 372 F.3d at 303; *see also Pressly*, 816 F.2d at 979;

8

*Bond*, 2010 WL 2943081, at *3–4. Accordingly, I recommend that the District Court **DENY** Caliguri's motion to dismiss.

*B.     Harding & ACRJ's Motion*

Harding and ACRJ first argue that the Court can *sua sponte* dismiss Smith's action because he did not exhaust his administrative remedies before filing suit. *See* Harding-ACRJ Br. 8–9. The Prison Litigation Reform Act requires inmates to properly exhaust "such administrative remedies as are available" before filing any federal lawsuit "with respect to prison conditions," 42 U.S.C. § 1997e(a). *See Jones v. Bock*, 549 U.S. 199, 211 (2007). "Where the prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal." *Aziz v. Pittsylvania Cnty Jail*, No. 7:11cv39, 2012 WL 263393, at *4 (W.D. Va. Jan. 30, 2012) (Urbanski, J.).

Exhaustion, however, is an affirmative defense that the defendant must plead and prove. *Jones*, 549 U.S. at 216. The Defendants do not assert that ACRJ "provide[d] an administrative grievance procedure," *Aziz*, 2012 WL 263393, at *4, that offered "the possibility of some relief for the action complained of" in Smith's lawsuit, *Booth v. Churner*, 532 U.S. 731, 739 (2001). Rather, they assert that Smith admits he did not exhaust all administrative remedies. Harding-ACRJ Br. 9. Smith maintains that his grievances were rebuffed by jail personnel as not "grievable." Compl. 1; Pl. Br. in Opp. 2. Thus, the Defendants did not carry their burden of proving that Smith failed to properly exhaust his "available" administrative remedies. *Jones*, 549 U.S. at 216.

Harding argues that Smith's Complaint does not state a claim against him because it does not include any allegations against the Sheriff. *See* Harding-ACRJ Br. 5. I agree. Smith's complaint merely names Harding as the lead defendant. *See generally* Compl. 1–4. Government

9

officials cannot be held vicariously liable for their subordinates' unconstitutional conduct. *Iqbal*, 556 U.S. at 676. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions [or inactions], has violated the Constitution." *Id.*

In his response brief, Smith alleges that Harding "works on the Board of [ACRJ]" and that, in this capacity, he would know that the jail's policies require "placing an inmate apart from another inmate for safety purposes." Pl. Br. in Opp. 3. Smith also alleges that Harding "is quite aware of the circumstances of this case by documentation reviewed by ACRJ. Yet, the officers involved in the booking process; the transportation to court, and the classification orders, [Harding] does not mention their names [sic]." *Id.* at 3–4.

Liberally construed, Smith's allegations suggest that Harding might "supervise" ACRJ officers and that Harding somehow "tacitly authorized" the series of these officers' acts and omissions that allowed Cruz to attack Smith in June 2014. "A supervisor may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place." *Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014); *accord Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Even assuming the Sheriff actually "supervises" jail employees, Smith's allegations do not support an inference that Harding "was aware before the date of [this] attack of any alleged defects in the [jail's keep-away] process . . . or of a pattern of officers" transporting vulnerable detainees and their potential assailants in the same vehicle. *Danser*, 772 F.3d at 349. Accordingly, I recommend that the District Court **GRANT** Harding's motion to dismiss.

ACRJ argues that Smith's Complaint does not state a claim against the jail because it does not allege that ACRJ had an "official policy or custom" of placing together inmates who pose a threat to one another. Harding-ACRJ Br. 6–7 (citing *Lavender v. City of Roanoke Sheriff's*

10

*Office*, 826 F. Supp. 2d 928, 934–35 (W.D. Va. 2011)). "[M]unicipalities and other local government bodies" are "subject to § 1983 liability only when" they cause "a deprivation through an official policy or custom." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis omitted). Smith's pleadings contain no such allegations. *See generally* Compl. 1–4; Pl. Br. in Opp. 2–6. In fact, he alleges exactly the opposite: ACRJ's policies "would order placing an inmate apart from another inmate for safety purposes." Pl. Br. in Opp. 3. More to the point, though, ACRJ is not a proper defendant because "the Jail is not a 'person' subject to [suit under] § 1983." *Dowdy v. Albemarle-Charlottesville Reg'l Jail*, No. 7:11cv457, 2011 WL 5075089, at *3 (W.D. Va. Oct. 25, 2011) (Urbanski, J.).Accordingly, I recommend that the District Court **GRANT** ACRJ's motion to dismiss.

C.     *Smith's Motion to Amend*

Smith also seeks to join the Charlottesville City Sheriff, Sergeant C.J. Mundy, Officer J. Lotts, and Corporal C. Woods as defendants in this action. Although leave to amend should be freely granted, Fed. R. Civ. P. 15(a)(2), a court may deny leave when it would be futile because the pleading does not allege facts that state a claim for relief against the putative defendant. *Cominelli v. Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 712 (W.D. Va. 2008). Similarly, a court should deny a motion to join new defendants where the plaintiff's pleadings "fail[] to describe a right of relief against them." *Robinson v. Bristol City Jail*, No. 7:13cv292, 2013 WL 4677598, at *2 (W.D. Va. Aug. 30, 2013) (Urbanski, J.) (citing Fed. R. Civ. P. 20(a)(2)). Thus, Smith's pleadings must contain specific factual allegations that, if accepted as true, "allow[] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that the proposed "defendants actually knew of and disregarded a substantial risk of serious injury to [Smith]," *Young*, 238 F.3d at 575–76; *accord Danser*, 772 F.3d at 349.

In his motion, Smith notes that ACRJ's "procedure is if the officer knows of a keep away, or are altered of one [sic], they add it to the PISTOL software keep aways [sic]." Mot. to Amend 2. He alleges that "Lotts was the booking officer for ACRJ, but did not enter the keep away in [the] PISTOL software system." *Id.* Smith alleges that Wood was an "intake officer assigned the day" Cruz and Smith were transported to court. *Id.* at 3. He also notes that "officers will notate the keep away on the court summary/officer release form," but that there "is no notation of any keep away between [Smith] and [Cruz]." *Id.* Smith alleges that Mundy transported Smith and Cruz to court on the day of the assault. *Id.* He does not know whether Mundy was "properly notified of a keep away" beforehand. *Id.*; *accord* Resp. to Order 2 ("John Doe II would be the officer who transported my codefendant and [me] to court. . . . The responsibility would be [on] either the transporter, or Detective McKay, who failed to inform him of the keep away."). Instead, Smith alleges that Mundy was advised of the attack after the fact and still "transported both [Smith] and [Cruz] back to the jail together." Mot. to Amend 3–4. Smith does not allege that Cruz assaulted him again.

Smith's allegations stop far "short of the line between possibility and plausibility of entitlement to relief" against these individual officers. *Iqbal*, 556 U.S. at 678. The fact that Lotts "was the booking officer for ACRJ" does not support an inference that he "had been exposed to information concerning the risk" Cruz posed to Smith, let alone that he "must have recognized" that his own failure to enter a keep-away order was "inappropriate in light of that risk." *Parrish*, 372 F.3d at 303. Similarly, Smith does not allege facts indicating that Woods or Mundy had any reason to believe—let alone actually knew—before the attack that Cruz posed any risk to Smith's safety. *See id.* Although Smith alleges that Mundy "disregarded the threat" that Cruz might strike again, Smith does not allege that he actually was assaulted on the return trip to the

12

jail or suffered any "physical harm at the hands of [his] fellow inmate[] resulting from" Mundy's alleged indifference to a "specific known risk of such harm." *Pressly*, 816 F.2d at 979; *see also Farmer*, 511 U.S. at 833–34 (contemplating that the plaintiff must suffer some "injury . . . at the hands of another" inmate before officials can be held liable for failing in their constitutional "duty to protect prisoners from violence at the hands of other prisoners"); *Wolters v. Fed. Bureau of Prisons*, 352 F. App'x 926, 927 (5th Cir. 2009) (per curiam) ("Wolters cannot prevail on his failure-to-protect claim because he does not allege that he suffered an actual physical injury resulting from prison officials' purported failure to protect" him from an "unreasonable risk" of violence); *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) ("Simply put, Babcock alleges, not a 'failure to prevent harm,' *Farmer*, 511 U.S. at 834, but a failure to prevent exposure to risk of harm. This does not entitle Babcock to monetary compensation." (citing *Carey v. Piphus*, 435 U.S. 247, 258–59 (1978)). The absence of an actual assault or physical injury extinguishes his claim. Finally, Smith "merely lists" the Charlottesville City Sheriff as a "proposed defendant[] in the motion to join without noting specific allegations against [him]" there or in his original complaint. *Robinson*, 2013 WL 4677598, at *1–2. Accordingly, I recommend that the District Court **DENY** Smith's motion to join these individuals as futile. *See id.*

## IV. Conclusion

The facts alleged in Smith's pleadings, taken as true, support a reasonable inference that Caligiuri actually knew of a substantial risk of serious harm to Smith and disregarded a direct instruction to initiate the process that could have reasonably prevented Cruz's attack on Smith. They do not support an inference that any of the other current or proposed defendants are personally liable for the misconduct alleged. Accordingly, I respectfully recommend that the

13

presiding District Judge **DENY** Caligiuri's motion to dismiss, ECF No. 30, **GRANT** Harding and ACRJ's motion to dismiss, ECF No. 23, and **DENY** Smith's motion to amend, ECF No. 36.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and unrepresented parties.

ENTER: August 5, 2015

Joel C. Hoppe
United States Magistrate Judge